SUSAN M. CHEHARDY, Judge.
| ¡¿Defendant, Daryl A. Smith aka Daryl Vinet, appeals his convictions, challenging the sufficiency of the evidence presented at trial. For the reasons that follow, we affirm.

Procedural History

On October 19, 2010, the Jefferson Parish District Attorney filed a five-count bill of information charging defendant, Daryl A. Smith aka Daryl Vinet, with (1) possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1;[1] (2) possession of a handgun while in possession of cocaine, in violation of La. R.S. 14:95(E); (3) possession of a handgun while in possession of heroin, in violation of La. R.S. 14:95(E); (4) possession with intent to distribute heroin, in violation of La. R.S. 40:966(A), and; (5) possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A). On the following date, defendant was arraigned and pled not guilty to these charges.
On December 1, 2010, the State amended the bill of information to dismiss the charges for (2) possession of a handgun while in possession of cocaine, in |sviolation of La. R.S. 14:95(E) and (3) possession of a handgun while in possession of heroin, in violation of La. R.S. 14:95(E). That day, defendant proceeded to trial before a twelve-person jury, which found him guilty as charged of the remaining three counts of the bill of information.
On December 9, 2010, the trial court sentenced defendant as a felon in possession of a firearm to 15 years imprisonment in the Department of Corrections; for possession with intent to distribute heroin to 30 years imprisonment with the first five years without benefit of parole, probation, or suspension of sentence; and, for possession with intent to distribute cocaine to 30 years imprisonment with the first two years without benefit of parole, probation, or suspension of sentence.[2] The court imposed each sentence to run concurrently with each other.
Additionally, on December 9, 2010, the State filed a multiple offender bill of information, charging defendant as a fourth felony offender. On the same date, defendant stipulated to being a fourth felony offender. The trial judge thereafter vacated defendant’s original sentence for possession with intent to distribute heroin and imposed an enhanced sentence of 30 years without benefit of probation or suspension of sentence with the first five years without any benefits. Next, the trial judge vacated defendant’s original sentence for possession with intent to distribute cocaine and imposed an enhanced sentence of 30 years without benefit of probation or suspension of sentence with the first two years without any benefits.
On February 23, 2011, defendant filed a motion for an out-of-time appeal, which was subsequently granted. This appeal follows.

*1052
|4Facts

In late September of 2010, Detective Tim Anclede of the Jefferson Parish Sheriffs Office (“JPSO”) began an investigation into illegal drug activity, which included surveillance of a residence at 8009 Macon Street in Jefferson Parish. Daryl Smith was seen entering and exiting the residence numerous times. After a few days, Detective Anclede requested and obtained a warrant to search the residence.
On October 4, 2010, Detective Anclede and other members of JPSO, including Detective Keith Locascio, executed the search warrant. After the officers entered the residence, they found defendant asleep in one of the bedrooms. After Detective Locascio advised defendant of his Miranda rights, Detective Anclede advised defendant that JPSO would be bringing a drug-detecting canine to help in executing the search warrant. Defendant advised that he had a weapon under the mattress where he had been sleeping.
When the drug-detecting dog entered that bedroom, the dog alerted, or “hit,” on a white jacket in the closet, a pair of black jeans on the floor, and a small measuring scale with white powder residue on a shelf near the bed. The dog did not alert in any other room of the residence.
Based on the alerts in that bedroom, JPSO seized from the pocket of a white jacket in the closet: (1) a clear plastic bag of white substance, which was later determined to be cocaine and (2) a plastic bag of another substance, which was later determined to be heroin. Further, JPSO also seized from a pair of black jeans on the floor next to defendant’s bed: (3) $1330.00 in cash, mainly $20.00 bills; (4) [5two small, clear plastic bags with a white substance, later determined to be cocaine; and (5) a wallet with defendant’s State identification card.[3]
Next, the officers seized (6) a small, digital scale with a (7) razor blade on it; (8) small, clear sandwich bags; (9) two cell phones; (10) aluminum foil;[4] and (11) correspondence addressed to defendant at Macon Street from the bedroom. Detective Anclede testified that defendant admitted that the clothing in the closet was his. Finally, JPSO seized two loaded firearms, which were hidden between the mattress and box spring of defendant’s bed, and ammunition suitable for use in those firearms.
Detective Anclede testified that, when defendant was asked about the money in the pocket, he explained that he works for friends and gets paid in cash. In a taped statement given after defendant waived his constitutional rights, defendant admitted that the two handguns; 8.3 grams of cocaine; and 8 grams of heroin belonged solely to him.
Marcel Folse of the Jefferson Parish Sheriffs Office Crime Lab, who was accepted as an expert in the field of controlled dangerous substance analysis, specifically cocaine and heroin, testified that the white powder in a clear plastic bag was cocaine, with a gross weight[5] of 9.18 grams. Further, Folse testified that the tan powder in a separate, clear, plastic bag was heroin, with a gross weight of 8.03 grams. Finally, the substances in the two *1053 small, plastic bags were 0.61 grams of cocaine and 0.28 grams of cocaine.
Lieutenant Daniel Jewell, Jr. of the JPSO was accepted as an expert in the field of narcotics investigation. In this capacity, he testified that three primary factors are used to evaluate whether an offender is charged with distribution: [ (¡quantity, value, and packaging. In his opinion, the amount of cocaine and heroin seized in this case were consistent with distribution, rather than personal use.
Further, the State presented certified conviction packets of two previous convictions, which matched fingerprints taken from defendant on the morning of trial by an expert in fingerprint analysis. Based on the foregoing, the jury found defendant guilty as charged of being a felon in possession of a firearm; possession with intent to distribute heroin; and possession with intent to distribute cocaine.

Law and Analysis

On appeal, defendant argues that the evidence presented at trial was insufficient to support his convictions of possession of a firearm by a convicted felon, possession with intent to distribute cocaine, and possession with intent to distribute heroin. The State responds that the evidence presented was sufficient to convict defendant of these offenses.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97); 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04); 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04); 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02); 811 So.2d 1015, 1019.
| /‘Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01); 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00); 772 So.2d 78, 83.
First, defendant challenges the evidence relating to his conviction for felon in possession of a firearm. In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had (1) possession of a firearm; (2) a prior conviction for an enumerated felony; (3) an absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. La. R.S. 14:95.1; State v. Jones, 09-688 (La.App. 5 Cir. 2/9/10); 33 So.3d 306, 314.
Here, defendant does not challenge the prior felony conviction or the requisite ten- *1054 year statutory period of limitations. Defendant argues rather that the State failed to present evidence that defendant possessed the weapon and that he had the requisite intent to possess the weapon.
Actual possession of a firearm is not necessary to prove the possession element of La. R.S. 14:95.1. Constructive possession is sufficient to satisfy the | ^element of possession. Jones, supra. A person is in constructive possession of a firearm if the firearm is subject to his dominion and control. Id.
Courts have regularly found that a gun placed under the mattress of a bed where the defendant sleeps is subject to his dominion and control. State v. Roundtree, 44,817 (La.App. 2 Cir. 3/3/10); 41 So.3d 512, 515. Further, in State v. Johnson, 98-604, 98-605 (La.App. 5 Cir. 1/26/99); 728 So.2d 901, 907-08, writ denied, 99-0624 (La.6/25/99); 745 So.2d 1187, this Court found that the defendant had constructive possession of a gun found lying between the mattress and box springs of the defendant’s bed.[6]
In the present case, defendant advised the police prior to the discovery of the firearms that there was a gun under his mattress. Further, the officers found two loaded firearms under the mattress where defendant had been sleeping when the police opened the door to the bedroom. As such, the jury could have found that defendant was in constructive possession of the firearms found in his bedroom and knowingly possessed the firearms in light of the location of the firearms and defendant’s admission to his knowledge of at least one weapon prior to its discovery. Further, the jury could have believed that defendant’s intention to possess the weapons was related to the narcotics and amount of cash found in the bedroom.
Defendant argues his confession alone cannot support this conviction and makes arguments regarding the law of corpus delicti. “In the trial of every criminal case the State, to warrant a legal conviction of an accused, must prove the corpus delicti, or the fact that a crime has been committed. Without such proof no conviction will be permitted to stand.” State v. Brown, 236 La. 562, 108 So.2d 233, 236 (1959). Suspicion, rumor, gossip, or mere hearsay evidence is not sufficient to |9establish the proof of corpus delicti. Id. An accused may not be convicted of a crime based solely on his own uncorroborated confession without some independent proof that a crime has been committed. The purpose behind this corroboration rule is to test the reliability of a defendant’s confession. State v. Connolly, 96-1680 (La.7/1/97); 700 So.2d 810, 820.
The corpus delicti rule does not require that independent evidence corroborate every element of the crime admitted in the accused’s statement, where its general reliability has been corroborated. Therefore, the corroborating evidence need only tend to show the major or essential harm involved in the offense charged, and not all of the elements technically distinguished. State v. Schnyder, 06-29 (La.App. 5 Cir. 6/28/06); 937 So.2d 396, 401. The issue is whether there is any evidence at all, independent of the confession, which establishes the fact that a crime was committed, not whether there is sufficient evidence to convict the defendant. Id.
In the present case, the State presented evidence, independent of defendant’s statements regarding the firearms, establishing the fact that a crime was committed. A *1055 search warrant was executed in a residence, which was linked to defendant through surveillance. Further, the bedroom was linked to defendant by finding defendant himself, as well as some of his belongings in the bedroom, such as his identification and mail addressed to him at that address. Defendant also admitted the clothes in the closet of this bedroom were his. The firearms were actually found in the bedroom, which was established as defendant’s bedroom, and were found in a location within defendant’s dominion and control and in which defendant, who was identified through evidence as a convicted felon, would have had knowledge since it was in between the mattress and the box spring where he apparently slept. Thus, even without defendant’s statement that the firearms |10belonged to him, the State presented evidence that defendant was in possession of firearms and was a convicted felon. We find, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant, beyond a reasonable doubt, was guilty of possession of a firearm by a convicted felon.
Next, defendant challenges his convictions for possession with intent to distribute cocaine, in violation of La. R.S. 40:967(A), and possession with intent to distribute heroin, in violation of LSA-R.S. 40:966(A). To prove these offenses, the State was required to show defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. See State v. Jones, 11-8 (La.App. 5 Cir. 11/15/11); 78 So.3d 274, 279, writ denied, 11-2781 (La.4/18/12); 85 So.3d 1246; State v. Collins, 09-283 (La.App. 5 Cir. 12/8/09); 30 So.3d 72, 77, writ denied, 10-0034 (La.9/3/10); 44 So.3d 696.
Possession of a controlled dangerous substance may be established by actual physical possession or by constructive possession. State v. Major, 03-3522 (La.12/1/04); 888 So.2d 798, 802. A person not in physical possession of a drug may have constructive possession when it is established that the drugs are under that person’s dominion or control. State v. Washington, 11-716 (La.App. 5 Cir. 3/13/12); 90 So.3d 1157.
 The mere presence in an area, however, where drugs are found or mere association with the person found to be in possession of the drugs is insufficient to constitute constructive possession. The question of possession hinges on the particular facts of each case. Factors to be considered in determining whether a defendant exercised sufficient dominion and control to constitute constructive possession include the following: (1) the defendant’s knowledge that illegal drugs were in the area; (2) the defendant’s relationship with the person found to be in |n actual possession; (3) the defendant’s access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users. Id.
La. R.S. 14:10(1) defines specific criminal intent as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” The intent to distribute may be established by proving circumstances surrounding the defendant’s possession, which give rise to reasonable inferences of intent to distribute. Jones, 78 So.3d at 279. Factors that may give rise to a reasonable inference that a defendant had the specific intent to distribute include the following: 1) previous attempts to distribute; 2) whether the drug was in a form consistent with distribution to others; 3) the amount of the drug; 4) expert or *1056 other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute. Id. This Court has held that by describing the factors as useful, the Louisiana Supreme Court did not require that the evidence fall squarely within those listed factors to be sufficient for the jury to find the requisite intent to distribute. Jones, 78 So.3d at 279-80.
Drug paraphernalia such as a scale indicates that the defendant possessed with intent to distribute. State v. Trahan, 425 So.2d 1222, 1225 (La.1983). Further, possession of large sums of cash and possession of weapons may also be considered circumstantial evidence of intent to distribute. See State ex rel B.L., 02-923 (La.App. 5 Cir. 1/28/03); 839 So.2d 246, 248. In the absence of these circum stances from which an intent to distribute may be inferred, the mere possession of drugs does not evidence intent to distribute, unless the quantity is so large that no other inference is possible. State v. Henry, 08-658 (La.App. 5 Cir. |1⅞10/27/09); 27 So.3d 935, 943, writ denied, 09-2485 (La.4/23/10); 34 So.3d 269. Further, the Louisiana Supreme Court found in State v. Hearold, 603 So.2d 731, 736 (La.1992), that the combination of prior drug distribution and the amount of drugs found in the bag were sufficient to convict the defendant of possession with intent to distribute.
With respect to his conviction for possession with intent to distribute cocaine, defendant argues that the State failed to produce sufficient evidence to link him to the cocaine found on the scene. Although defendant suggests that the cocaine in the bedroom was not linked to him, the State presented evidence that the bedroom where the cocaine was discovered belonged to defendant, even though defendant argued he did not live at this address. Further, the cocaine was found in a jacket pocket in a closet full of clothes that defendant admitted belonged to him. Also, cocaine was found in the pocket of a pair of jeans that also contained defendant’s wallet and state identification card. Further, defendant admitted in his statement that the cocaine, which was approximately 8.3 grams, belonged to him.
The State presented evidence of previous attempts to distribute. In fact, the State presented evidence regarding defendant’s prior convictions of two counts of possession with intent to distribute cocaine in case number 01-2327. Further, the State presented evidence through expert testimony that the cocaine found in the bedroom was consistent with distribution and inconsistent with personal use, after considering the quantity, value, and packaging of the cocaine. The expert also testified regarding the paraphernalia, which evidences an intent to distribute.
Lieutenant Jewell explained that nine grams of powder cocaine would cost about $350.00 or $400.00 and would be much more than the amount generally obtained by an addict for personal consumption. He also testified that, when the police come across a user, the user generally possesses devices, such as needles, 113spoons, metal objects, bottle caps, straws, a rolled up piece of paper, or a dollar bill, to ingest the drugs they obtain.[7] Here, the police did not recover such devices from defendant’s bedroom.
Lieutenant Jewell explained that, if a person was selling cocaine, the police *1057 would expect to see razor blades, scales, measuring devices, and packaging materials, such as plastic baggies. He also explained that the aluminum foil and sandwich bags would be found in a bedroom or bathroom, which is not normally where kitchen supplies are stored.
With regard to this case, Lieutenant Jewell testified that, in his opinion, the fact that two individual packages of drugs in two different pants’ pockets “is a possibility of distribution.” Further, large amounts of currency in small bills, multiple cell phones, and weapons used to protect the “cache” of drugs and money are indicative of intent to distribute.
Lieutenant Jewell opined that a “very wealthy person” might have the resources to obtain eight grams of cocaine for personal use but examples of that are “few and very far in between.” He also explained that typically people who possess drugs solely for personal use do not possess weapons because they usually do not have the money to buy or maintain the weapon or would sell the weapon for the money to buy drugs.
In the present case, the State presented evidence that defendant had been convicted of possession with intent to distribute cocaine in 2002. Further, in the same bedroom where more than eight grams of cocaine was discovered, the police also seized a large amount of currency; firearms; multiple cell phones; sandwich bags; and a scale with white powder residue.
| i/The jury, by its verdict of guilty, obviously accepted Lieutenant Jewell’s testimony that the evidence surrounding the cocaine was consistent with distribution and rejected the possibility that the cocaine was for personal use. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08); 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id.
It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id. As such, we find, after viewing the evidence presented at trial in the light most favorable to the prosecution, a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was guilty of possession with intent to distribute cocaine.
Finally, with respect to his conviction for possession with intent to distribute heroin, defendant contends that the State failed to prove the requisite intent and possession. Defendant argues that, without his statement, all that is left is his mere presence in the area where the drugs were found, which is insufficient.
Here, the State presented evidence that heroin was found in a jacket in the closet of defendant’s bedroom. Defendant admitted that the clothes in this closet belonged to him. Further, after the heroin was discovered, defendant admitted that the heroin belonged to him. Defendant had access to the area where the drugs were located in his bedroom and was in the bedroom when the officers arrived at the residence for execution of the search warrant.
Further, the circumstances surrounding defendant’s possession of the heroin give rise to reasonable inferences that defendant had the specific intent to distribute |15the heroin. The State presented evidence through expert testimony that the heroin found in the bedroom was *1058 consistent with distribution and inconsistent with personal use, after considering the quantity, value, and packaging. The expert also testified regarding the paraphernalia that evidences an intent to distribute.
Lieutenant Jewell testified that he would expect to see money and sometimes multiple cell phones as well as firearms or weapons to protect the drugs and money. Lieutenant Jewell testified that with heroin, eight grams would be very expensive. He explained that this drug was more addictive, more volatile, and more expensive. He believed that eight grams of heroin would cost between $800.00 and $1250.00. He testified that with personal use of heroin, he would look for needles and cooking devices. He explained that, for distribution of heroin, they look for paraphernalia such as plastic baggies and a small, square piece of foil, which is often used for a $20.00 or $25.00 “foil.” Much of the currency found in defendant’s bedroom was $20.00 bills.
When asked about eight grams of heroin, Lieutenant Jewell said he definitely would not consider that amount to be for personal use. He explained that it was expensive and that it took a toll on a body. Although Detective Anclede testified that none of the items such as.the scale, razor blade, aluminum foil, or sandwich bags were illegal by themselves, he also testified that usually such items are kept in the kitchen.
The jury, by its verdict of guilty, obviously accepted Lieutenant Jewell’s testimony that the evidence surrounding the heroin was consistent with distribution. Further, the jury was instructed as to the law and obviously found that there was more evidence than defendant’s mere association with the bedroom in which the heroin was found.
| j (¡Defendant again makes the argument that his statement alone cannot support his conviction. However, there was independent evidence of the crime without defendant’s admission that the narcotics belonged to him. The narcotics were found in a bedroom established to be his. Defendant was found to be in possession of the narcotics, even without his admission that it belonged to him. Also, defendant’s statement did not admit his intent to distribute.
As such, we find, after viewing the evidence presented at trial in the light most favorable to the prosecution, that a rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was guilty of possession of a firearm by a convicted felon, possession with intent to distribute cocaine, and possession with intent to distribute heroin. Accordingly, defendant’s convictions are affirmed.

Errors patent

As is our practice pursuant to La. C.Cr.P. art. 920, we have reviewed the record for errors patent. We find none that require correction.

Conclusion

For the foregoing reasons, defendant’s convictions are affirmed.

AFFIRMED

. The bill of information reflects that defendant had been previously convicted of possession of cocaine in case number 02-6613 in Division "B” of the 24th Judicial District Court.

. When sentencing defendant, the trial judge stated defendant’s sentences were to be served in the custody of the "Department of Corrections.” Only those individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections. La. R.S. 15:824(C); State v. Vance, 06-452 (La.App. 5 Cir. 11/28/06); 947 So.2d 105, 109 n. 3, writ denied, 07-0152 (La.9/28/07); 964 So.2d 351.

. The identification with defendant’s name found in the wallet reflected defendant’s address as 1359 South Dilton Street.

. Detective Anclede testified that aluminum foil was consistent with narcotics trafficking, especially heroin.

. Folse explained that gross weight includes the substance and packaging.

. In Johnson, the jury was faced with conflicting testimony as to whether this room belonged to the defendant and as to whether the defendant even lived at this residence.

. Lieutenant Jewell did explain that a razor blade could be used for personal consumption if it was used to cut it down into lines to snort it or to break it down to smaller amounts to ingest.