JUDE G. GRAVOIS, Judge.
12Pefendant, Anthony Belvin, appeals his convictions for possession of at least 28 grams or more of cocaine, possession of a firearm while in possession of a controlled dangerous substance, and attempted possession of a stolen firearm. On appeal, he argues that the trial court erred in denying his motion for a new trial, and that the evidence was insufficient to support the guilty verdicts. For the reasons that follow, we affirm defendant’s convictions and sentences, and , remand the matter to the district court for correction of defendant’s sentencing minute entry as described herein.

PROCEDURAL HISTORY

On August 21, 2009, the St. John the Baptist Parish District Attorney’s Office filed a bill of information charging defendant, Anthony Belvin, with the following crimes: 1) possession of 400 grams or more of cocaine, in violation of La. R.S. 40:967(A)(Í )(F)(c) (count one); 2) possession of MDMA, in violation of La. R.S. 40:966(C) (count two); 3) possession of a firearm while in possession of a controlled dangerous substance, in violation of La. R.S. 14:95(E) (count three); and |34) possession of a stolen firearm, in violation of La. R.S. 14:69.1[1] (count four). The bill of information states that these crimes were committed on July 6, 2009. On September 8, 2009, defendant was arraigned and entered pleas of not guilty to all charges.
Defendant went to trial before a twelve-person jury on March 28, 2011. On March 31, 2011, the jury found defendant: 1) guilty of possession of at least 28 grams or *989 more of cocaine;[2] 2) not guilty of possession of a Schedule I controlled dangerous substance (N-Benzylpiperazine);[3] 3) guilty of possession of a firearm while in possession of a controlled dangerous substance; and 4) guilty of attempted possession of a stolen firearm.[4]
The record shows that defendant’s sentencing was scheduled and rescheduled several times. On September 7, 2012, the trial court denied defendant’s motion for a new trial. On November 15, 2012, defendant was sentenced to: 1) fifteen years with the Department of Corrections on count one (possession of at least 28 grams or more of cocaine); 2) five years with the Department of Corrections on count three (possession of a firearm while in possession of a controlled dangerous substance); and 3) two years with the Department of Corrections on count four (attempted possession of a stolen firearm). The sentences were ordered to run concurrently with each other and with the sentence defendant was then serving.

\ .FACTS

Corporal Tanner Mangano, an officer in the narcotics investigations department of the St. John the Baptist Parish Sheriffs Office, testified that the department began investigating defendant for narcotics trafficking in February of 2009. During that time, the. department conducted heavy surveillance of an apartment located at 469 Sycamore Loop in LaPlace, Louisiana, frequented by defendant. On July 6, 2009, Corporal Mangano culminated the investigation with the execution of a search warrant at the apartment. He testified that the investigation concluded with the recovery of approximately two pounds of cocaine, marijuana, a stolen firearm, a handgun with an obliterated serial number, digital scales, other drug paraphernalia, and a large amount of cash located inside the apartment, as well as with the arrest of defendant and a co-defendant.
Corporal Mangano testified that he knew defendant would be at that location because the residence had been under surveillance for several months, during which time officers observed defendant apparently residing there. That evening, prior to executing the search warrant, surveillance monitored all activity around the apartment. Officers concluded that defendant and a black female (later identified as Ty-cara Washington) were inside the apartment.[5] Prior to applying for the search warrant, a confidential informant confirmed that a substantial amount of narcotics was located in the apartment.[6]
Sergeant Blaine Rome, a narcotics agent with the St. John the Baptist Parish Sheriffs Office, testified that he was assigned to conduct surveillance on 469 Sycamore *990 Loop on July 6, 2009. He testified that Corporal Mangano asked him to develop an observation point near the target apartment. After conducting ^surveillance on the apartment for approximately one hour, Sergeant Rome saw a car pull into the parking lot of the apartment complex with two male subjects inside. Defendant came outside, walked to the car, and engaged in conversation with the two males.[7] As Corporal Mangano exited his vehicle outside the target apartment to execute the search warrant, defendant saw him and fled inside. Corporal Mangano and the other officers followed defendant into the residence and detained him in the northwest bedroom where approximately 800 grams of cocaine was located.[8] Corporal Manga-no seized what he believed to be marijuana, a “Lays” potato chip can that contained several large bags of cocaine and two other bags of crack cocaine, and a “Nike” shoe box that contained three large vacuum-sealed bags of cocaine.[9] He also recovered a handgun with an obliterated serial number, a loaded rifle,[10] and miscellaneous documents, one of them being a “light bill” from Entergy for the apartment in defendant’s name. The handgun, as well as ammunition, was located on top of the dresser in the bedroom opposite the one where defendant was detained. The loaded rifle was located in the closet of that same bedroom.
In the kitchen area in plain view was a digital scale, as well as a second digital scale in the kitchen drawer, and a “Bara-sol” shaving cream can (known as a “hide-a-can.”) This can contained a false compartment, where Corporal Mangano found additional crack cocaine and a pill identified on the scene as MDMA.
Accordingly to Corporal Mangano, when defendant’s mother arrived on the scene, defendant asked the officers to give her a jacket. After locating the jacket, officers discovered a thousand dollars in cash concealed in a pocket of the jacket.
|fiAs part of his investigation, Corporal Mangano learned that a male named Jeffrey Poche leased the apartment at 469 Sycamore Loop. However, Corporal Man-gano testified that he never saw Mr. Poche at that apartment.[11] During the months of surveillance, Corporal Mangano observed defendant “hundreds” of times at 469 Sycamore Loop. Tycara Washington was never seen at that address prior to the evening of July 6, 2009.
On cross-examination, Corporal Manga-no testified he did not document the number of times he witnessed defendant going in and out of the Sycamore Loop apartment, though he stated that it was “hundreds of times” during the investigation. Nor did he photograph defendant going in and out of the apartment. The application for the search warrant stated that Corporal Mangano observed vehicles at the residence, but not that he observed defendant there.
Corporal Mangano testified that no usable, identifiable fingerprints were found at *991 the location. None of the drugs found at the apartment were found, on defendant’s person. Corporal Mangano did not witness defendant throw any marijuana or cocaine away from himself.
One of the police databases referenced and used by Corporal Mangano listed defendant’s address as 114 Orchard Street in Mt. Airy, Louisiana. Corporal Mangano testified he never saw a driver’s license for defendant listing him as living at 469 Sycamore Loop and never put out a criminal bulletin with defendant residing at that address.
The parties stipulated that Patrick Lane from the Louisiana State Police Crime Lab was an expert in the field of fingerprint collection. He testified that while his lab technicians were able to develop a few partial fingerprints from the evidence seized, they were ultimately unable to recover any usable or identifiable 17fingerprints from the items that were submitted for testing. He explained the various reasons why fingerprints are either not left on surfaces or degrade once deposited. He testified that the fingerprint analysis in this case did not show any fingerprints attributable to defendant or anyone else.
Tycara Washington testified that she was arrested on July 6, 2009, along with defendant. She had accompanied defendant a total of four times to 469 Sycamore Loop. She said that defendant had a key to the apartment, but she did not. She never observed anyone else in the apartment and defendant never informed Ms. Washington that it was not his apartment. She observed defendant change clothes while at the apartment, but said he did not bring clothing into the apartment. She would bring a toothbrush to the apartment if she spent the night there, but never witnessed defendant bring a toothbrush there. She testified that she would also meet defendant at the. Orchard Street address. On July 6, 2009, she had spent most of the day at the Sycamore Loop apartment, and she was present when the police officers executed the search warrant. She testified that during the night in question, they were not doing any drugs, nor did she see any. She similarly did not see defendant in possession of drugs or a gun. According to Ms. Washington, she was told that if she testified truthfully in defendant’s case, the charges against her would be dropped, but that if she did not testify, charges would not be dropped.
Gaynelle James, defendant’s mother, who was called as a witness by the defense, testified that her mother and her son (defendant) lived at 114 Orchard Street in Mt. Airy. She testified that defendant lived at Orchard Street since he was sixteen years old, and she never heard of him living on Sycamore Loop. She testified that she arrived at the Sycamore Loop address after having been informed that defendant had been arrested, and she was able to “lay [her] eyes on him” |8before the police told her to leave. She testified that she was never given anything, including a jacket or key to the Sycamore Loop apartment, from the police.
ASSIGNMENT OF ERROR NO. TWO[12]

Sufficiency of the evidence

Defendant argues that the evidence was insufficient to support the verdicts. He *992 argues that where the evidence showed that other persons had equal or greater access to the contraband at issue, the State must prove beyond a reasonable doubt that defendant possessed the contraband at issue. Defendant argues the following points: the apartment was rented to Jeffery Poche; the apartment was also frequented by Tycara Washington; the majority of the cocaine was found out of view hidden in a wall; there were no fingerprints of defendant found on any item of contraband recovered from the apartment; there was no testimony at trial regarding any act of his tending towards proof of possession of the contraband; and there was no evidence in the record to show that defendant placed any of the contraband where it was found or even knew of its location.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is “whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Smith, 12-247 (La.App. 5 Cir. 12/11/12), 106 So.3d 1048, writ denied, 13-194 (La.7/31/13), 118 So.3d 1120; State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Smith, 106 So.3d at 1053; State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. “Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Smith, 106 So.3d at 1053; State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every "reasonable hypothesis of innocence.” State v. Smith, 106 So.3d at 1053. See also La. R.S. 15:438.
To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of cocaine and that he knowingly possessed it. See State v. Mitchell, 09-996 (La.App. 5 Cir. 5/25/10), 40 So.3d 1122, writ denied, 10-1557 (La. 10/21/11), 73 So.3d 370. The element of possession may be established by demonstrating that the defendant exercised either actual or constructive possession of the controlled dangerous substance. Id. Guilty knowledge is an essential element of the crime of possession and such knowledge may be inferred from the circumstances. Id.
In arguing insufficient proof to establish possession, defendant relies on State v. Cann, 319 So.2d 396, 400 (La.1975), where the Louisiana Supreme Court found that the State presented no evidence that the defendant had possession, dominion, or control over the located contraband. A different individual leased the apartment and marijuana was found in plain view in the kitchen. Id. Defendant additionally depends on State v. Harris, 597 So.2d 1105, 1106 (La.App. 2 Cir.1992), where the Second Circuit reversed the defendant’s conviction after deeming the evi *993 dence legally insufficient to convict him of attempted possession of cocaine.
However, defendant’s reliance on the above-mentioned cases is misplaced, as both of those cases are factually distinguishable from the instant case. In Cann, the State did not offer evidence that the defendant had previously been in the apartment, that any individual other than the tenant had access to the apartment, that the defendant had any control over the contraband, or how long the defendant was located in the apartment that evening. Id. In Harris, only scant details were available, including the fact that the defendant did not reside in the apartment, and that there were four persons in the apartment when the police arrived to investigate. Harris, 597 So.2d at 1106. Additionally, a police officer testified that it was possible that either the defendant or a second individual dropped the contraband on the ground. Id. at 1108. Further, both men’s and women’s clothing were found in the apartment and the police did not determine who occupied the bedroom that contained the contraband. Id. at 1107. The officer testified that he could not connect the defendant with the paraphernalia located in the bedroom, stipulating that the defendant did not have access to the bedroom while he was under police observation. Id.
In the present case, however, Corporal Mangano testified that police surveillance demonstrated that defendant frequented the Sycamore Loop apartment on a regular basis between February 2009 and the date of defendant’s arrest on July 6, 2009. Ms. Washington’s testimony also established that defendant frequented the apartment, with him bringing her there on at least four separate occasions, several of which were overnight visits during which Ms. Washington noted that defendant did not bring clothing or personal items with him, those already being at the apartment. Defendant possessed a key to the apartment and a |n “light bill” from Entergy was found in his name inside of the apartment. Ms. Washington testified that she did not go to the apartment except with defendant, and that no one else was at the apartment when they were together there.
Additionally, although the apartment was leased to Mr. Poche, he had been incarcerated since March - 27, 2009, well before the drugs and weapons were found in the apartment, and continued to be incarcerated through the time of the seizure of the drugs and weapons. Further, it was not shown that any person other than defendant had physical access to the apartment.
The facts in this case more closely resemble those in State v. Miller, 945 So.2d at 776-778, where the defendant’s conviction of attempted possession of cocaine was upheld. In Miller, the defendant was convicted of attempted possession of cocaine subsequent to surveillance being set up at an apartment. After a search warrant was obtained for the apartment, cocaine was uncovered. On appeal, the defendant challenged the sufficiency of the evidence because the State failed to prove that he had specific intent to possess cocaine, and argued that he was not in constructive possession of the cocaine. The defendant’s theory of the case was that although the apartment was used for his business, he did not reside at the apartment. According to the manager of the property, the apartment was leased to another individual, not the defendant. One witness testified that she believed the defendant did reside at the apartment in question, while another witness testified that he believed the defendant did not dwell there. This Court found that although there was evidence that many people frequented the apartment, there was *994 also evidence that the defendant did in fact live there. Several personal documents bearing -the defendant’s name were found at the apartment, and the defendant possessed a key to the apartment. Therefore, under those circumstances, this Court 11 ¡.found that the evidence showed beyond a reasonable doubt that defendant constructively possessed the cocaine found in the apartment.
In State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 884, writ denied, 03-909 (La.9/26/03), 854 So.2d 345, the defendant argued that the evidence was insufficient to show his constructive possession of cocaine. The defendant was not listed on the lease of the premises, but rather his wife was. While acknowledging that being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession, this Court nevertheless found the evidence supported a finding that the defendant had dominion and control over the cocaine seized in the apartment sufficient to constitute constructive possession. A police officer testified that he monitored the apartment complex on numerous occasions during the month leading up to the defendant’s arrest, and on at least three occasions, he witnessed the defendant leave the complex. There was mail addressed to the defendant and his wife at the apartment, and the defendant possessed a key to the apartment. Thus, it could be concluded that the defendant and his wife shared the apartment.
In the present case, Corporal Man-gano testified that surveillance was set up for at least five months prior to defendant’s arrest. While under surveillance, defendant was observed at the apartment “hundreds” of times. Ms. Washington testified that defendant had a key to the apartment. She testified that defendant never brought clothes to change into or a toothbrush to the apartment, and yet, he did change clothes at the apartment with clothing located there. Ms. Washington never went to the apartment except in defendant’s company. While defendant was not listed on the lease, a “light bill” from Entergy with defendant’s name on it was discovered in the apartment and submitted into evidence.
1 ^Considering all of the above, we find that the evidence showed beyond a reasonable doubt that while defendant may have at times stayed at the Orchard Street address, he also resided at the Sycamore Loop apartment and had dominion and control over the evidence seized there pursuant to the search warrant, and accordingly had constructive possession of the cocaine and firearms in question. The evidence likewise failed to show that either Mr. Poche or Ms. Washington, or anyone else for that matter, had the requisite access to the apartment to show they had dominion or control over the premises and its contents. The lack of fingerprints was explained, and the fact that fingerprints were not developed does not negate the evidence of defendant’s occupation of and control of the premises. Accordingly, pursuant to the constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson, supra, we find that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential ■ elements of the crimes proven beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. ONE

Denial of motion for a new trial — voir diré issue
Defendant also argues that the trial court erred in denying his motion for a new trial based on the fact that during *995 voir dire, the jury foreman, William Campbell, failed to disclose that he was employed as a “badge-wearing” law enforcement officer with the Kenner Police Department. Defendant argues that Mr. Campbell’s lack of candor was so inexcusable and prejudicial that it denied him his right to a fair trial.
In response, the State argues that even if Mr. Campbell was a “badge-wearing” law enforcement officer, that point alone was not sufficient to establish a prejudicial error, because Mr. Campbell affirmed that he could view the evidence | 14fairly. Therefore, the State argues that because defendant was unable to demonstrate a prejudicial error, this assignment of error lacks merit.
In instances involving misstatements of jurors, the defendant must demonstrate that he was prejudiced by the misstatement for the new trial to be warranted. State v. Johnson, 32,910 (La.App. 2 Cir. 1/26/00), 750 So.2d 398, 403-04, writ denied, 00-911 (La.11/3/00), 773 So.2d 140. Police officers are not disqualified as jurors simply because they are employed as police officers. State v. Ledet, 00-1103 (La.App. 5 Cir. 7/30/01), 792 So.2d 160, 179, writ denied, 01-2451 (La.9/30/02), 825 So.2d 1185.
In this case, juror Campbell made no misstatements. During voir dire, when asked if anyone had friends or relatives employed by the District Attorney’s Office, the Sheriffs Department, or any other law enforcement agency, Mr. Campbell answered “yes”, but in “other” police departments. When asked if that would affect his ability to serve on the jury, Mr. Campbell replied that it would not. Mr. Campbell was additionally asked if a police officer starts off on equal footing, with more or less credibility than other testifying witnesses. Mr. Campbell responded that a police officer will “[sjtart off on equal footing.” The State asked Mr. Campbell who his current employer was, to which he replied, “Kenner Police Department.” Mr. Campbell’s answer was direct, clear, and accurate.
The defense did not ask Mr. Campbell any further questions regarding his employment or duties with the Kenner Police Department. It has not been shown that defendant was prevented in any way from questioning Mr. Campbell. Defense counsel apparently chose not to question Mr. Campbell’s employment further, as a matter of trial strategy or for whatever reason. Defendant has not demonstrated that Mr. Campbell lied during voir dire. While Mr. Campbell theoretically could have voluntarily provided supplemental information regarding his employment |! ¿with the Kenner Police Department, he was not obligated to do so and the record does not reflect that he lied or mislead the court with his direct answers. This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reflects that the trial court failed to notify defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required by La.C.Cr.P. art. 930.8. We accordingly hereby inform defendant by way of this opinion that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under La.C.Cr.P. art. 914 or 922. State v. Drewery, 12-236 (La.App. 5 Cir. 1/30/13), 108 So.3d 1246; State *996 v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-158 (La.10/16/09), 19 So.3d 473.
We also note the following discrepancy between the minute entry of defendant’s sentencing and the transcript thereof. In the transcript, the trial judge ordered that defendant be sentenced to five years with the Department of Corrections for the charge of possession of a firearm while in possession of a controlled dangerous substance; however, the minute entry reflects the sentence for such conviction as ten years with the Department of Corrections. When the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983); State v. Mitchell, 10-934 (La.App. 5 Cir. 4/26/11), 64 So.3d 391, 397. Accordingly, we remand the matter for the limited purpose of ordering the district court to correct the minute entry regarding defendant’s said sentence to So.2d 732 (La.1983); State v. Mitchell, 10-934 (La.App. 5 Cir. 4/26/11), 64 So.3d 391, 397. Accordingly, we remand the matter for the limited purpose of ordering the district court to correct the minute entry regarding defendant’s said sentence to conform to the transcript. We further direct the Clerk of Court to transmit the corrected minute entry to the officer in charge of the institution to which defendant has been sentenced, as well as the Legal Department of the Department of Corrections. State v. Mitchell, 64 So.3d at 397; See also State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.

CONCLUSION

For the foregoing reasons, defendant’s convictions and sentences are affirmed. This matter is remanded to the district court for correction of the minute entry as described above.

CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR CORRECTION OF MINUTE ENTRY.

. La. R.S. 14:69.1 was amended effective on August 1, 2014. However, since the instant charge occurred prior to the amendment, our analysis herein is based on the version of the statute prior to the amendment.

. Although defendant was charged with possession of 400 grams or more of cocaine, he was convicted of the lesser responsive verdict of possession of at least 28 grams or more of cocaine.

. Defendant was initially charged in count two with possession of MDMA; however, lab results indicated the pill in question was actually N-Benzylpiperazine, also a Schedule I controlled dangerous substance under La. R.S. 40:966(C). Prior to trial, count two of the bill of information was thus amended to possession of N-Benzlypiperazine. The trial court rearraigned defendant on the amended charge and defendant entered a plea of not guilty thereto.

. Although defendant was charged with possession of a stolen firearm, he was convicted of the lesser responsive verdict of attempted possession of a stolen firearm.

. Through the confidential informant, Corporal Mangano had knowledge that defendant possessed a "chopper” — a large caliber rifle.

. Testimony from the officers revealed that both men were arrested and found in possession of drugs.

. Corporal Mangano testified that he explained to defendant why he was there, provided him a copy of the search warrant, and read him his rights. He escorted defendant into the living room while the search was conducted.

. The "Nike” shoe box was located inside of a wall near some plumbing pipes.

. The serial number on the rifle showed that it had been stolen in 2005 in St. John the Baptist Parish.

. Corporal Mangano testified that Mr. Poche had been incarcerated since March 27, 2009.

. When the issues on appeal relate to both the sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Miller, 06-451 (La.App. 5 Cir. 10/31/06), 945 So.2d 773, 778-79. If the reviewing court determines that the evidence was insufficient, then the defendant is entitled *992 to an acquittal, and no further inquiry as to other assigned errors is necessary. Id.