GRAVOIS, J.
| defendant, Sean E. Stock, appeals his convictions for simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2 (count one), and for receiving stolen things having a value of over $1,500.00, in violation of La. R.S.. 14:69 (count two). On appeal, defendant argues that the evidence is insufficient to convict him of the burglary charge. He also argues that the trial court erred in accepting the victim’s testimony as to the value of the stolen things. Finally, he argues that the trial court’s use of a predicate conviction to charge him as a habitual offender was error because of defects in his guilty plea to the predicate offense.
Upon review, for the following reasons, we affirm defendant’s convictions. However, based on our errors patent review, we vacate defendant’s adjudication and sentence as a habitual offender, reinstate defendant’s original sentence on count one that was vacated, and remand the matter to the trial court to rule on defendant’s outstanding motion to reconsider his original sentences and for further proceedings as warranted.
PROCEDURAL HISTORY
On August 3, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant, Sean E. Stock, with simple burglary of an inhabited dwelling, in violation of La. R.S. 14:62.2. On August 4, 2015, defendant was arraigned and entered a plea of not guilty. Thereafter, on October 28, 2015, a superseding bill of information was filed against defendant, additionally charging him with receiving stolen things having a value of over $1,500.00, in violation of La. R.S. 14:69. On October 29, 2015, defendant was arraigned and entered a plea of not guilty to the superseding bill of information.
On March 21, 2016, defendant went to trial before a twelve-person jury, which on March 22, 2016 returned a verdict of guilty as charged as to both counts. ROn March 23, 2016 and March 31, 2016, defendant filed a motion for post-verdict judgment of acquittal and a motion for a new trial, respectively, which motions were denied on April 4, 2016. The trial court then sentenced defendant to ten years imprisonment at hard labor on each count to be served concurrently. Also on April 4, 2016, defendant filed a motion to reconsider his sentences.[1]
*1272 On March 30, 2016, the State filed a habitual offender bill of information alleging that defendant was a second felony-offender based on a 2004 conviction for carjacking. On April 11, 2016, defendant filed a motion to quash and an objection to the habitual offender bill, therein denying the allegations. On April 28, 2016, defendant filed a pro se motion for an appeal of his convictions and original sentences, which was granted on May 16,2016.
On August 26, 2016, the trial court denied defendant’s motion to quash, and after a habitual offender bill hearing, adjudicated defendant as a second felony offender. The trial court then vacated defendant’s original sentence on count one and resentenced him under the habitual offender statute to ten years imprisonment at hard labor, to be served without the benefit of probation or suspension of sentence and concurrently with the previous sentence imposed on count two and any other sentence defendant was then serving. Defendant orally moved for reconsideration of his enhanced sentence, which was denied during the hearing. Defendant also filed a written motion for reconsideration of the sentence imposed on August 26, 2016, which the trial court denied on its face that same day. Defendant’s appeal follows.
FACTS
On Saturday, June 20, 2015, Jeannie La-mury, a widow, was living alone at her home on 47th Street off of Causeway Blvd. in Metairie, Louisiana. At around 8:00 a.m. that day, Ms. Lamury left her home to spend the day at her mother’s 13house. Ms. Lamury returned home that evening. When she sat down on the sofa to watch television, she noticed a grape juice bottle on a nearby bookshelf; she thought that was odd, since she had not had any juice that morning. She also noticed that a large bowl of change was missing. At approximately 7:30 p.m. that evening, Ms. Lamury called 9-1-1 to report that someone had been inside of her home. Once the police arrived, part of their investigation centered on how the burglar had entered the home. There were no broken windows and Ms. Lamury could not recall whether the side door, which entered into the den from the carport, had been locked. She stated that she kept a spare key in her shed, which was located not far from the side door. Ms. Lamury did not search for other missing items at that time.
Deputy Daniel Ordoyne with the Jefferson Parish Sheriffs Office responded to Ms. Lamury’s 9-1-1 call. While on the scene, Deputy Ordoyne spoke with Christopher Dickson, who lived across the street from Ms. Lamury. Mr. Dickson informed Deputy Ordoyne that sometime between noon and 2:00 p.m. that day, while he was inside of his home, he observed a white male with a slim build, about 5’8‘ or 5’9‘ in height, with short dark ham, in a black shirt and with a backpack, walking down the sidewalk towards the Lamury residence. About half an hour later, the man left the house with the backpack. Mr. Dickson stated that he had never seen this person on the street before and could not describe the man’s face.
Meanwhile, that same day, at approximately 4:00 p.m., Detective George Kister with the Jefferson Parish Project STAR Division[2] was patrolling nearby in an unmarked vehicle when he observed an individual, later identified as defendant, traveling on a bicycle eastbound on Andover Street towards Causeway Boulevard. Fa *1273 miliar with the area, Detective Kister followed defendant and lost sight of him at one point as he navigated through the neighborhood on his bicycle. Detective |4Kister observed defendant re-emerge and followed him as he went around the side of a nearby church. Defendant spotted Detective Kister, dismounted his bicycle, and walked towards Detective Kister’s vehicle.
After exiting his vehicle and making contact with defendant, Detective Kister asked defendant if he could perform a weapons pat-down search, to which defendant consented. During his pat-down of defendant, Detective Kister felt a bulge in defendant’s right front leg pocket. Defendant informed Detective Kister that the bulge was jewelry and gave Detective Kis-ter consent to remove the bulge, which was a mix of men and women’s jewelry.[3] Defendant informed Detective Kister that he had received the jewelry from a man named Perry, but he did not know where Perry got the jewelry from. Suspecting that the jewelry might be stolen property, Detective Kister asked defendant if he could have it; defendant agreed. Detective Kister brought the jewelry to the burglary division at the investigations bureau, took photographs of the jewelry, and logged it in as property, pending further investigations.[4]
The following day, Sunday, June 21, 2015, Ms. Lamury attended a barbeque at her mother’s house for most of the day. When she returned home, she sat down on the sofa and turned her television on as she had done the previous day. Ms. Lamu-ry then looked over towards her desk in the den and noticed that her laptop was gone. She also noticed that another laptop was missing from the front living area of her house. Ms. Lamury again called 9-1-1 to report that for the second night in a row, someone had been in her home and that her computers were missing.
When the police arrived, Ms. Lamury told them that she had removed the spare key from her shed and had locked the door before she had left earlier in the | Rday. She then went into her bedroom and realized that some of her jewelry was missing from boxes on her shelf. She described that a wedding set, a Ramsey’s solitaire diamond engagement ring, and a 14-carat gold band were missing, as well as her husband’s 14-carat gold band and some costume jewelry. Before leaving the scene, Deputy Ordoyne notified the detective bureau of the burglary.
On Tuesday, June 23, 2015, Detective Manual Estrada with the burglary division of the Jefferson Parish Sheriffs Office came to Ms. Lamury’s home for a followup investigation and asked if she knew someone by the name of Sean. At first, Ms. Lamury did not recognize anyone by that name, but then remembered that she had previously hired someone to do yard work and painting. The detective showed Ms. Lamury a picture of defendant on his phone and Ms. Lamury recognized the person in the picture as the same person who had cut down a tree in her yard and painted her kitchen two or three years earlier. The detective also showed Ms. La-mury the photographs of the jewelry that had been taken by Detective Kister; she recognized the jewelry as hers.[5]
*1274 Detective Estrada then notified Detective Kister that they were interested in defendant in regards to the jewelry that Detective Kister had brought in previously. After finding defendant sleeping under the overpass at Causeway Boulevard and Metairie Road, defendant willingly went with Detective Kister to the investigations bureau.
At the investigations bureau, defendant met with Detective Estrada and Detective Darrin Parent and was read his Miranda[6] rights. Defendant executed a rights of ar-restee form and cooperated with the detectives. During the interview, defendant admitted that he had done work at a couple of houses on 47th Street a few years prior, though he never identified Ms. Lamury by name. At first, ^defendant stated that he did not know where the jewelry came from; he only admitted that on Saturday, he had seen Perry, whom he had only met a few times before. Defendant identified Perry in a photograph and complained that Perry had stolen fishing gear from him. Defendant reported that Perry had the jewelry and had given it to him on Saturday afternoon for him to sell. He stated he figured that it was stolen property.[7]
Later, defendant changed his story and revealed that he told Perry that there were big jars of change in the third house from the end of the street, likely amounting to between one to two hundred dollars, and that he had planned to go to Winn Dixie to cash in the change. Defendant informed the detectives that he and Perry rode bikes there. He described Perry as wearing jeans and having a backpack on that Saturday. Defendant denied entering the home, but admitted that he waited near a nearby barroom for around thirty minutes. He denied knowing how Perry had entered into Ms. Lamury’s home. Defendant recalled that when Perry exited the home, he did not have any change, but he gave defendant the jewelry. Defendant said that he encountered Detective Kister within an hour or so of when he obtained the jewelry from Perry. Defendant denied knowing anything about Ms. Lamury’s home being broken into on Sunday or about the computers. Following his statements, defendant was placed under arrest for simple burglary and illegal-possession of stolen things.
ASSIGNMENT OF ERROR NUMBER ONE

Sufficiency of the evidence of burglary

In his first assignment of error, defendant argues that the evidence was insufficient ■ to support his- conviction of simple burglary of an inhabited dwelling. He argues that the State failed to prove beyond a reasonable doubt the essential elements of his identity or that he had specific intent to commit a felony or any 17theft inside the dwelling. Specifically as to identity, defendant contends that, the State’s primary eyewitness could not place him at Ms. Lamury’s residence, and there was no physical evidence at the scene linking him to the offense. He distinguishes the facts of this matter from State ex rel J.W., 14-292 (La.App. 4 Cir. 10/29/14), 157 So.3d 764, where a police officer observed the defendant exit the house, and from State v. Netter, 11-202 c/w 11-203 (La. App. 5 Cir. 11/29/11), 79 So.3d 478, writ denied, 12-32 (La. 8/22/12), 97 So.3d 357, where the victim provided a description of the perpetrator who matched the defendant. He argues that here, there was no evidence that he was near Ms. Lamury’s home or that he was seen leaving the home. The State responds that any trier of fact could reasonably conclude that defen *1275 dant was guilty, at least as a principal, to simple burglary of an- inhabited dwelling. The State argues that defendant admitted he acted as a lookout for the crime.
The standard of review for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). When circumstantial evidence forms the basis of a conviction, La. R.S. 15:438 requires that the elements of the offense be proven so that every reasonable hypothesis of innocence is excluded. State v. Schnyder, 06-29 (La. App. 5 Cir. 6/28/06), 937 So.2d 396, 400; State v. Tran, 97-640 (La. App. 5 Cir. 3/11/98), 709 So.2d 311, 316. This is not a separate test from the reasonable doubt standard in Jackson, swpra, but rather provides a basis for a determination of the existence of reasonable doubt. All of the evidence, both direct and circumstantial, must be sufficient to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Id.
|sThe credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Schnyder, supra; State v. Baker, 01-1397 (La. App. 5 Cir. 4/30/02), 816 So.2d 363, 365. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id. Under the Jackson standard, a review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Schnyder, supra; State v. Barnes, 98-932 (La. App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La. 9/17/99), 747 So.2d 1099. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by a defendant offers an exculpatory explanation of events. State v. Mitchell, 09-996 (La. App. 5 Cir. 5/25/10), 40 So.3d 1122, 1127, writ denied, 10-1557 (La. 10/21/11), 73 So.3d 370. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
La. R.S. 14:24 provides that “all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly procure another to commit the crime, are principals.”[8]
Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein. La. R.S. 14:62.2. In order to convict an accused of simple | burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry; (2) .the structure was inhabited at the time of entry;[9] and (3) the defendant had the specific intent to commit a felony or theft inside the structure. *1276 State v. Dibartolo, 14-691 (La. App. 5 Cir. 2/11/15), 168 So.3d 754, 758; State v. Barroso, 99-1297 (La. App. 5 Cir. 5/17/00), 762 So.2d 206, 213, writ denied, 00-1744 (La. 6/29/01), 794 So.2d 821.
Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Alexander, 16-84 (La. App. 5 Cir. 7/27/16), 197 So.3d 843, 849; State v. Ray, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden. Id.
In State v. Blanks, 07-1292 (La. App. 1 Cir. 2/8/08), 977 So.2d 306, writ denied, 08-703 (La. 10/10/08), 993 So.2d 1282, the court found that the evidence was sufficient to support the defendant’s conviction of simple burglary of an inhabited dwelling when the defendant was found shortly after the burglary in possession of a large trash bag containing meat missing from the victim’s home, as well as a single earring taken from her residence, even though the victim never saw the defendant. The court looked to the circumstances surrounding the defendant’s actions on that date, notably his possession of the stolen property shortly after the burglary. Id.
Here, defendant argues that the evidence was insufficient to prove that he was the perpetrator who entered Ms. Lamury’s home. He points to Mr. Dickson’s failure to identify him as the person seen approaching Ms. Lamury’s residence. Although there were no eyewitnesses who observed defendant enter Ms. Lamury’s home or any physical evidence at the scene linking defendant to the offense, the |inState proved the element of identity through defendant’s own statements made to detectives at the investigations bureau and the circumstances surrounding defendant’s actions on that date. Defendant admitted that he informed Perry that Ms. Lamury had large jars of change inside her home, which he estimated amounted to one to two hundred dollars. Defendant informed the detectives that while Perry entered, he waited near a nearby barroom for approximately thirty minutes. See State v. Burns, 32,904 (La. App. 2 Cir. 2/1/00), 750 So.2d 505, 509 “([A] person does not have to be present or intimately involved in a crime to be considered a principal of the crime.”); State v. Mack, 30,832 (La. App. 2 Cir. 6/24/98), 715 So.2d 126, 129 (“A person who serves as a ‘lookout’ is a principal to a burglary.”). The evidence presented by the State and the testimony of Mr. Dickson reflect that the barroom was next door to Mr. Dickson’s house, where he was readily able to observe an individual walk “straight down into” Ms. Lamury’s home on that date. Although J.W., supra, and Netter, supra, involved specific identification of the defendants, the law does not require that the defendant be identified at the scene by an eyewitness to prove his identity as a principal to the crime of simple burglary of an inhabited dwelling.
Moreover, defendant was found in possession of Ms. Lamury’s jewelry within an hour or so of the time he estimated the burglary occurred and approximately 1.8 miles from Ms. Lamury’s home. Therefore, defendant’s assertion that he did not enter Ms. Lamury’s home is of no moment, because even if defendant did not physically enter Ms. Lamury’s home, the State proved beyond a reasonable doubt that defendant was a principal to the crime under the facts of this case, and thus, it proved the identity of defendant as a principal of simple burglary of an inhabited dwelling sufficient to convict him.
Specific intent is required for a conviction for simple burglary, and it may be *1277 inferred from the circumstances and actions of the accused. State v. Naquin, 10-11474 (La. App. 5 Cir. 2/15/11), 61 So.3d 67, 71. Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” Id. See also Dibartolo, supra, 168 So.2d 754 at 759.
Defendant asserts that the State failed to prove that he had the specific intent to commit a felony or theft inside of Ms. Lamury’s home, an element of La. R.S. 14:62.2. However, as defendant admitted, he informed Perry that Ms. Lamury had large jars of change inside her home. According to defendant, he and Perry rode bicycles to 37th Street, and defendant waited for approximately thirty minutes near the barroom near Ms. Lamury’s house for Perry after pointing out Ms. Lamury’s house. Defendant planned to cash the change in at Winn Dixie once he had it. He admitted that when Perry exited the residence, he asked about the change, and Perry gave him the jewelry instead. He was stopped approximately 1.8 miles from Ms. Lamury’s house in possession of her jewelry within an hour or so of the burglary, in his own estimation. Therefore, the State sufficiently proved that defendant had the specific intent to commit a felony or theft inside of Ms. Lamury’s home.
We find that under the Jackson standard, the State proved beyond a reasonable doubt that defendant was a principal to the crime of simple burglary of an inhabited dwelling and that he had the specific intent to commit a theft or felony therein. Considering the foregoing, we find that the evidence presented, when viewed in the light most favorable to the prosecution, was sufficient to sustain defendant’s conviction for simple burglary of an inhabited dwelling. This assignment of error is without merit.
| ^ASSIGNMENT OF ERROR NUMBER TWO

Value of the stolen things

Defendant next argues that it was error for the trial court to allow Ms. Lamury’s testimony to establish the value of the jewelry. He argues that her testimony was not corroborated by experts or receipts and that much of the jewelry in question was costume jewelry and not of significant value. Defendant argued in his motion for post-verdict judgment of acquittal that the value of the jewelry was less than $500. The State contends that the uncontradict-ed testimony of Ms. Lamury was sufficient to establish the value of the jewelry. It argues that defendant did not contradict Ms. Lamury’s valuations or show that she lacked knowledge of the items’ costs.
At trial, Ms. Lamury testified that after Hurricane Katrina, she had a part-time business selling costume jewelry on eBay. She stated that she would buy vintage jewelry at thrift stores and from online suppliers, and at one time, sold mainly sterling jewelry. As to the engagement and wedding band set, Ms. Lamury stated that she bought it from her daughter and that it had come from Ramsey’s Jewelers, a store in Metairie. Ms. Lamury testified that when documenting the items in the Jefferson Parish Sheriffs Office Property Report, she estimated the value of the items at the minimum value she would have sold them for on eBay. Ms. Lamury estimated the property at the minimum value of each item when completing the Property Report for the Sheriffs Office.
In order to support a conviction for illegal possession of stolen things valued at $1,500.00, or more, the State must prove beyond a reasonable doubt that the defendant: 1) intentionally possessed, procured, received, or concealed; 2) anything of value; 3) that was the subject of any robbery or theft; (4) where circumstances indicate *1278 that the defendant knew or had good reason to believe that the thing was the subject of one of these offenses; and (5) that the value of the | iastolen item was $1,500, or more. La. R.S. 14:69; State v. Warrick, 15-617 (La. App. 5 Cir. 2/24/16), 186 So.3d 1263, 1268.
The Property Report completed by Ms. Lamury was a two-page document that listed the stolen items and a total for each page. The second page correctly lists the amount of the combined items on that page as $77.00. However, the first page incorrectly calculates the total of the items on that page as $2,366.00; the total of the items on the first page actually equals $1,866.00. Therefore, the actual total amount of the items is $1,943.00. Despite this incorrect calculation, the State charged defendant with the correct grade of La. R.S. 14:69 since the total value of the items equals over $1,500.00. See also La. R.S. 14:69(B)(1).
In the present case, defendant only argues that the State failed to prove the value of the objects taken. When the degree of the crime is based on the value of the stolen property possessed, the testimony of the owner is sufficient to establish the value of the stolen property if it is clear and uncontradicted. State v. Richey, 13-228 (La. App. 5 Cir. 10/30/13), 128 So.3d 1143, 1150; State v. Ramsdell, 06-644 (La. App. 5 Cir. 12/27/06), 949 So.2d 508, 511-12. The owner does not need to be qualified as an expert in order to testify as to the value of the thing owned by him. State v. Dilworth, 358 So.2d 1254, 1256-1257 (La. 1978).
Here, Ms. Lamury, the owner and victim, testified as to the value of each item. Ms. Lamury’s estimate as to the value of the property was uncontradicted. Ms. La-mury had purchased the wedding band set from her daughter and had her own business for a few years selling costume jewelry on eBay. Thus, Ms. Lamury’s testimony was sufficient to establish that the value of the property exceeded $1,500.00. Therefore, under the Jackson standard, the State proved beyond a reasonable doubt that defendant illegally received stolen property having a value of $1,500.00 or more. This assignment of error is without merit.
luASSIGNMENT OF ERROR NUMBER THREE

Improper use of predicate offense as basis for habitual offender adjudication

In his third assignment of error, defendant argues that the predicate offense of carjacking used as the basis for the habitual offender bill of information was invalid because the trial court inadequately advised him of his right to confront and cross-examine witnesses when he entered his guilty plea to the predicate offense. Defendant argues that this was a violation of his due process rights. Defendant cites to Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), for the general assertion that a defendant’s rights to confront and cross-examine witnesses are fundamental. Based upon the certified copy of the predicate conviction, which included the transcript from the guilty plea colloquy, the State argues that it met its burden, and defendant was adequately advised of his rights to confrontation and cross-examination during the pri- or guilty plea,
In order to prove that a defendant is a habitual offender, the State must establish by competent evidence the defendant’s prior felony convictions and that defendant is the same person who was convicted of the prior felonies. State v. Woods, 09-399 (La. App. 5 Cir. 3/9/10), 38 So.3d 391, 398, writ denied, 10-784 (La. 10/29/10), 48 So.3d 1096. In addition, when *1279 a defendant’s habitual offender status is based on guilty pleas in the predicate convictions, the State has the burden of proving the defendant was represented by counsel when the guilty pleas were taken. Id. See also State v. Shelton, 621 So.2d 769, 779 (La. 1993).
If the State meets its burden of proof, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant meets this burden, then it shifts back to the State to prove the constitutionality' of the plea by producing a perfect transcript, which shows that the defendant’s waiver of his Boykin rights was voluntary, informed, and express. If the State produces anything |15less than a perfect transcript, such as a guilty plea form, minute entry, or imperfect transcript, the trial judge must weigh the evidence to determine whether the defendant’s prior plea was both knowing and voluntary. Woods, supra. See also Shelton, supra.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 274 (1969), the United States Supreme Court emphasized three federal constitutional rights that are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront accusers. Because a plea of guilty waives these fundamental rights of an accused, due process requires that the plea be a voluntary and intelligent waiver of known rights in order to be valid. Id. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. State v. Galliano, 396 So.2d 1288, 1290 (La. 1981).
The State proved by competent evidence that defendant had a prior conviction of carjacking and was represented by counsel. The burden then shifted to defendant to show affirmative evidence of an infringement of his rights dr a procedural irregularity in the taking of the plea, As he did below, defendant avers on- appeal that the Boykin transcript was defective as the trial court failed to advise him of his rights to confrontation, and cross-examination. The State provided the transcript of defendant’s prior guilty plea at the habitual bill hearing. According to the Boykin transcript of defendant’s guilty plea for the predicate conviction, the trial judge stated: “You’re giving up your right to force the district attorney to call witnesses who would testify against you at trial?” Defendant responded: “Yes sir.”
The State also presented the certified conviction packet for defendant’s predicate conviction of carjacking. The certified conviction packet contains a Waiver of Constitutional Rights Plea of Guilty form signed by defendant, his attorney, and the trial judge. The guilty plea form provides, in part, that defendant |1fiwas informed that by pleading guilty, he would be giving up the right to “forcé the District Attorney to call witnesses who, under oath, would have to testify against me at trial; and to have my attorney ask questions of each of those witnesses.” Defendant initialed “S.E.S.” next to this right and also signed the bottom of the plea form, as did his defense attorney and the trial judge. In State v. Mosley, 10-266 (La. App. 5 Cir. 11/9/10), 54 So.3d 692, 696, this Court found that guilty plea forms with the same language in this matter as to the defendant’s right to confront and cross-examine witnesses failed to contain affirmative evidence of an irregularity or infringement in the prior plea.
Based on the foregoing, defendant failed to meet his burden under Shelton, supra, to produce affirmative evidence of an infringement of his rights or a procedural irregularity in the taking of the plea. This assignment of error is without merit.
*1280 ERRORS PATENT REVIEW
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). Two matters were found that merit discussion and attention.

Lack of a ruling on defendant’s motion to reconsider his sentences

First, as to defendant’s motion to reconsider his original sentences, defendant’s argument during the habitual bill hearing appears to pertain to his original sentence on count one, which was vacated. In giving reasons for denying the second motion to reconsider the habitual offender sentence, the trial judge stated that defendant had a prior conviction for carjacking and that defendant knew the victim. Thus, the trial court’s reasons indicate that it denied the oral motion to reconsider the habitual offender sentence made on that date, rather than the original motion to reconsider. The hard labor commitment from the habitual offender | shearing provides: “Motion to Reconsider Sentence filed in open court and DENIED.” La. C.Cr.P. art. 881.4 provides that if it is “necessary to an appropriate disposition of a motion to reconsider sentence, the appellate court may remand the case to the district court with instructions to supplement the record or to hold an evidentiaiy hearing.” Ordinarily, where an appellant alleges a sentencing error on appeal, along with one or more additional errors, and where the trial court has failed to rule on the appellant’s timely motion to reconsider sentence, this Court has ruled on the merits of the other assignments and remanded the matter for a ruling on the outstanding motion. Mosley, 54 So.3d at 697. On appeal, defendant does not assign any errors pertaining to his original sentences. Moreover, defendant’s sentence on count one was vacated at the time he was sentenced as a habitual offender.[10] Nevertheless, defendant’s motion to reconsider his original sentences remains pending. Therefore, we remand the matter for the trial court to consider defendant’s motion to reconsider his original sentences.[11]

Lack of proof of “cleansing period” in the habitual offender proceeding

Second, the Habitual Offender Law provides that it is inapplicable where more than ten years have elapsed between the date of the commission of the current offense and the expiration of the maximum sentence of the previous conviction. La. R.S. 15:529.1(C); State v. Mosley, 08-1319 (La. App. 5 Cir. 5/26/09), 16 So.3d 398.[12] The State bears the burden of proving that the predicate convictions fall within the “cleansing period” prescribed by La. R.S. 15:529.1(C). State v. Mosley, 16 So.3d at 401; State v. Wise, 13-247 (La. App. 5 Cir. *1281 11/19/13), 1828 So.3d 1220, 1226-27, writ denied, 14-253 (La. 9/12/14), 147 So.3d 703. This ten-year “cleansing period” begins to run from the date that a defendant is actually discharged from state custody and supervision. State v. Anderson, 349 So.2d 311, 314 (La. 1977); State v. Thomas, 04-1341 (La. App. 5 Cir. 5/31/05), 904 So.2d 896, 906, writ denied, 05-2002 (La. 2/17/06), 924 So.2d 1013. Thus, the commencement of the “cleansing period” is from the date of discharge from state supervision because the discharge can take place earlier than the theoretical date on which the sentence would have terminated due to pardon, commutation, or good time credit, or it could take place later because of parole revocation. State v. Humphrey, 96-838 (La. App. 5 Cir. 4/29/97), 694 So.2d 1082, 1088, writ denied, 97-1461 (La. 11/7/97), 703 So.2d 35. However, if less than the “cleansing period” has elapsed between a defendant’s conviction on a predicate felony and his commission of a subsequent predicate felony, the State need not prove the date of discharge on the earlier sentence in the habitual offender proceedings. State v. Wise, 128 So.3d at 1226-27.
The certified records of defendant’s carjacking conviction introduced into evidence (case number 04-6312) show that on September 21, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant with carjacking. On December 13, 2004, defendant entered a plea of guilty to the offense and was sentenced to five years at hard labor without the benefit of parole, probation, or suspension of sentence. The instant offenses were committed on June 20, 2015. Hence, more than ten years had elapsed between defendant’s predicate conviction for carjacking on December 13, 2004 and the commission of the instant offense on June 20, 2015. Thus, the State was required to prove that the underlying offense was committed within ten years of defendant’s release from state custody for the predicate conviction in case number 04-6312. During the habitual offender proceeding, the State provided the following argument:
lisln 2004—On December 13, 2004, while being represented by Tracy Glori-oso, the Defendant pled guilty as charged to carjacking. And that was in 2004. He received five years DOC.
This offense in this case was June 20th, 2015. That is less than six years past since the completion of the sentence. So therefore it’s within the ten-year range that is also required.
Upon review, we find that the record fails to include any other evidence or information concerning defendant’s actual discharge date from state custody on his sentence for his carjacking conviction. Therefore, the State failed to provide sufficient evidence to meet its burden of proving that the predicate conviction for carjacking fell within the ten-year “cleansing period” prescribed by La. R.S. 15:529.1(C). Accordingly, the trial court erred in finding defendant to be a second felony offender.[13], [14]
Considering the foregoing, we vacate defendant’s adjudication and enhanced sentence as a second felony offender. See State v. Payne, 586 So.2d 652, 656 (La. App. 5 Cir. 1991), rehearing denied, 626 So.2d 913 (La. App. 5 Cir. 1993). We fur *1282 ther reinstate defendant’s original sentence on count one that was vacated.
CONCLUSION
For the foregoing reasons, defendant’s convictions are affirmed, defendant’s adjudication and
sentence as a habitual offender are vacated, defendant’s original sentence on count one that was vacated is reinstated, and the matter is remanded to the trial court to rule on defendant’s outstanding motion to reconsider his original sentences and for further proceedings as warranted.
CONVICTIONS AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCE VACATED; ORIGINAL SENTENCE ON COUNT ONE REINSTATED; REMANDED WITH INSTRUCTIONS

. See Errors Patent Review for discussion regarding the failure of the trial court to rule on defendant’s motion to reconsider his original sentences.

. Detective Kister testified that members of "Project STAR” patrol predominately high drug activity areas in the parish.

. At trial, Detective Kister identified the photographs of the jewelry in question as the objects that were removed from defendant’s pocket.

. The testimony established that the location where Detective Kister spoke with defendant and found the jewelry was 1.8 miles from Ms. Lamury’s residence.

.Ms. Lamury identified the wedding set, the gold band, the costume jewelry, two watches, and a jewelry box for the wedding set from photographs.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

, The interview was admitted into evidence and published to the jury.

. The trial judge instructed the jury as to the law of principals.

. It need not be shown that a person was present in the structure at the time of the burglary, only that someone was living in the housé at that time. See State v. Conn, 420 So.2d 1123 (La. 1982).

. Although defendant’s original sentence on court one was vacated by the trial court as part of its sentencing of defendant as a habitual offender, because we have found an error in defendant’s habitual offender adjudication which necessitated our vacation of defendant’s habitual offender adjudication and sentence, we have reinstated defendant's original sentence on court one. See infra.

. La. C.Cr.P. art. 916 provides, in pertinent part: "The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to: ... (3) Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence. ...”

. In State v. Raymo, 419 So.2d 858, 861 (1982), the Supreme Court held that ”[b]e-cause the state’s case was devoid of evidence of an essential element of the charged offense ,.. defendant’s conviction and sentence must be set aside ... regardless of how the error is brought to the attention of the reviewing court." This Court has applied Raymo, supra, to habitual offender proceedings. Mosley, supra, 16 So.3d 398 at 401.

. This Court reached the same conclusion under both similar facts and procedural posture in State v. Mosley, 16 So.3d at 404.

. We further note that double jeopardy principles are inapplicable to sentence enhancement proceedings. State v. Dorthey, 623 So.2d 1276, 1279 (La. 1993). Accordingly, the State may retry defendant on the habitual offender bill of information if it is able to cure the noted defect, if it so desires. State v. Mosley, 16 So.3d at 404.