STATE OF LOUISIANA

VERSUS

WAYNE NORMAN

NO. 20-KA-142

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-7454, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING

December 30, 2020

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**REVERSED AND VACATED, IN PART;**
**JUDGMENT OF ACQUITTAL RENDERED ON COUNT TWO**
    **MEJ**
    **SMC**
    **FHW**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Darren A. Allemand
    Joshua K. Vanderhooft
    Rachel L. Africk

COUNSEL FOR DEFENDANT/APPELLANT,
WAYNE NORMAN
    Prentice L. White

**JOHNSON, J.**

Defendant, Wayne Norman, appeals his conviction for illegal possession of stolen things valued at less than $1,000 from the 24th Judicial District Court, Division "I". For the following reasons, we affirm Defendant's convictions as to counts one and three. Furthermore, we reverse and vacate Defendant's conviction on count two, and enter a judgment of acquittal on count two.

## FACTS AND PROCEDURAL HISTORY

On January 18, 2019, the Jefferson Parish District Attorney filed a bill of information charging Defendant with armed robbery of Leonard Richard in violation of La. R.S. 14:64 (count one); illegal possession of stolen things valued between $5,000 to $24,999, in violation of La. R.S. 14:69(B)(2) (count two)[1]; and aggravated flight from an officer in violation of La. R.S. 14:108.1(C) (count three). On the same date, Defendant was arraigned and pleaded not guilty.

On February 11, 2019, Defendant filed a motion for the appointment of a sanity commission, which was granted by the trial court on February 19, 2019. On April 10, 2019, the trial court held a competency hearing, and Defendant was found incompetent to proceed. On August 28, 2019, another competency hearing was held, after which the trial court found Defendant competent to proceed to trial.[2] On October 10, 2019, the trial court heard Defendant's motion to suppress evidence and statement, and the motions were denied on that same date.

On October 29, 2019, trial commenced before a 12-person jury and concluded the following day. At trial, Darell Johnson, a mechanic, testified that he was the owner of a 2002 black Ford Escape, bearing Louisiana license plate 242-

---

[1] The bill of information reads that Defendant "violated La.R.S.14:69(B)(2) in that he did intentionally possess, procure, receive, or conceal Ford Escape, belonging to D. Johnson valued at between $5,000 to $24,999, which has been the subject of a robbery or theft, under circumstances which indicate that the defendant knew or had good reason to believe was the subject of one of these offenses." La. R.S. 14:69(B)(2) provides the following with regards to the grade of the offense: "when the value of the stolen things is five thousand dollars or more, but less than a value of twenty-five thousand dollars."

[2] The *Nunc Pro Tunc* minute entry dated September 5, 2019, corrects the minute entry dated August 28, 2019.

AYI. Mr. Johnson identified several photographs of his vehicle. He confirmed that his vehicle was stolen on November 14, 2018. At around 7:00 a.m. that day, Mr. Johnson went outside to start his vehicle to allow the car to "warm up" due to the cold weather. When he returned to check on his vehicle, Mr. Johnson discovered that his vehicle was missing.[3] Once his vehicle was returned, Mr. Johnson found damage that cost approximately $500 to repair. He estimated that he purchased the car for "between fifteen hundred and two thousand dollars."[4] Mr. Johnson explained that he purchased the vehicle for less than its value because the car "needed some mechanical repairs." Mr. Johnson testified that the vehicle's actual value was more than $5,000.

Deputy Kyle Miller with the Jefferson Parish Sheriff's Office (JPSO) testified that he and Deputy Eric Glorioso were involved in a high-speed chase on November 15, 2018. On that day, the officers responded to an alert regarding a stolen vehicle at "Ames and Barataria."[5] Deputy Miller recalled that the vehicle was a black Ford Escape, and they came into contact with it in the afternoon. He initially witnessed the vehicle "traveling south down Ames," after going through an intersection at "Barataria and Ames." Deputy Miller verified that the vehicle's license plate number matched that of the stolen black Ford Escape.[6] At around 11:35 a.m., in a nearby Exxon gas station parking lot, Deputy Miller attempted to initiate a traffic stop, but the vehicle immediately fled.[7]

---

[3] Nancy Clary with the Jefferson Parish Sheriff's Office testified that she worked at the 9-1-1 center and was designated representative for custodian of records. She identified an audio recording of a 9-1-1 call reporting a stolen vehicle, and the 9-1-1 call was introduced as State's Exhibit 1, admitted into evidence, and published to the jury.

[4] Mr. Johnson testified that the vehicle had about "a hundred and three, a hundred and four thousand miles on it" at the time of purchase.

[5] Deputy Miller explained that license plate recognition cameras set up throughout Jefferson Parish alerted the officers to a stolen vehicle.

[6] A map containing an aerial view of the general area where the vehicle traveled was introduced, admitted, and published to the jury. Throughout his testimony, Deputy Miller used the map to demonstrate the path the vehicle took when fleeing from the police.

[7] Deputy Miller recounted the vehicle went through the middle of the gas station pumps before exiting onto Barataria heading north.

After traveling on several streets, the vehicle turned at "Eastview," drove onto a "wet and muddy" canal bank, and subsequently crashed.[8]  Deputy Miller testified that the vehicle was immovable after the driver lost control of the car and struck a telephone pole.  At that point, the suspect, later identified as Defendant, opened the door, stepped out of the car, turned and looked at the deputies, and fled on foot.

During the chase, Deputy Miller observed the vehicle strike another car, drive in the opposite lane of traffic on several occasions, and travel over the speed limit.[9]  At some point, Deputy Miller also observed a black male reaching under the seat of the vehicle.[10]  Deputy Miller recalled that the suspect was wearing a white shirt under a "black hoodie," jeans that were "too big for him," and a "gym short" under his pants.

Deputy Miller and Deputy Glorioso chased the suspect on foot but lost sight of him after he jumped fences in between Paige Jeanette and Lynnbrook Drive. Afterwards, a perimeter was established in the immediate area.  Deputy Miller and other detectives later responded to a 9-1-1 call which was placed from 2485 Lynnbrook Drive.  The suspect was located at this residence in an upstairs closet and was detained by the officers.  The deputies discovered cash and a clear plastic bag containing "two hearing tools along with a hearing aid battery" in the suspect's front pocket.  Deputy Miller identified Defendant in open court as the same suspect from earlier that day.[11]

---

[8] Deputy Miller indicated that the vehicle traveled on Barataria, went onto Cousins Boulevard, and turned left at Woodmere.

[9] JPSO Deputy Eric Glorioso testified that the suspect struck another vehicle on Barataria and later traveled against oncoming traffic.  He explained that the suspect pushed other vehicles from the road and almost hit them.

[10] Deputy Miller confirmed that Detective Glorioso was "dispatching what was going on in real time" while the incident occurred.  A recording of the dispatch was also introduced and was played for the jury.  Detective Glorioso advised headquarters of Deputy Miller's observation regarding a male reaching under the seat.

[11] Deputy Glorioso testified that the suspect wore "off colored jeans," another pair of light blue "shorts or pants," and a "black hoodie."  Deputy Glorioso identified Defendant in open court.  After he was apprehended and arrested, Deputy Glorioso advised Defendant of his rights.

Deputy Mark Pennison, a former commander in the K-9 division, testified that he was working as a K-9 officer on November 15, 2018. Deputy Pennison testified that he went to a scene in the Woodmere neighborhood after learning that a suspect had fled from a vehicle. Deputy Pennison and his dog began tracking the suspect from the crash site of the vehicle. He entered the back yard of a residence after his dog alerted to a fence at the rear of the Lynnbrook area. Deputy Pennison identified photographs taken of the residence. He noted that there was a "sweater type hat" located in the yard. Deputy Pennison explained that his dog showed interest in a locked sliding glass door at the home. He indicated that the suspect was later apprehended inside of this residence.

JPSO Deputy Damian Laport testified that on November 15, 2018, he was dispatched to the Woodmere area after a suspect fled from the police. After looking over a fence in the area, Deputy Laport and Sergeant Lee Hardy discovered a firearm in the back yard at 2498 Paige Jeanette.[12] JPSO Sergeant Lee Hardy confirmed that on November 15, 2018, a Smith and Wesson handgun was located in the back yard of 2498 Paige Jeanette. He obtained consent to search the yard from the owner before collecting the weapon.

Taijuana Harris testified that on November 15, 2018, she called her fiancé and informed him that someone might be in their home. At around 10:30 a.m. or 11:00 a.m., Ms. Harris noticed that someone might be inside her residence because she heard noises. After learning her fiancé was not home, Ms. Harris checked the bedrooms and opened doors but did not find anyone.[13] Her fiancé called 9-1-1 when she continued to hear noises in her home. Ms. Harris testified that the police located a "guy" in her daughter's bedroom. She stated that she had not seen the

---

[12] It is noted that Deputy Laport initially stated the address was 2468 Lynnbrook; however, he later explained that the front of the residence faced Paige Jeanette.

[13] Ms. Harris noted that she did not open the closet doors when she was looking in her house. She testified that her bedroom was located across the hall from her children's bedrooms.

individual before and he did not have permission to be in her home. Ms. Harris confirmed that various items were discovered inside of her family's backyard shed and did not belong to them. Ms. Harris later contacted law enforcement because her fiancé's pine-green Nike shoes were missing, and an unknown pair of shoes were found in a downstairs closet. It was later discovered that these shoes belonged to Defendant. At the time of the incident, Ms. Harris had nine dogs inside of the home, and she explained that the dogs did not bark. She testified that her fiancé left the back door unlocked after letting their dogs outside.

Kenneth Jefferson testified that on November 15, 2018, he lived with Ms. Harris and their children at 4367 Lynnbrook Drive in Harvey. Mr. Jefferson largely corroborated Ms. Harris' testimony regarding the events leading him to place the 9-1-1 call.[14] He also corroborated her account of discovering his missing shoes and finding an unknown pair of blue shoes in their closet. After looking at his security cameras, Mr. Jefferson verified that the suspect was wearing his shoes when he left the residence.[15] Mr. Jefferson testified that the back door was locked before he left the house.

Michael Aicklen, a JPSO crime scene investigator, testified that he was involved in the investigation of different crime scenes on November 15, 2018. Mr. Aicklen testified that he collected a "black hoodie" and a pair of "blue jean shorts" from inside a shed, a "black knit cap" from the back yard, and a pair of blue shoes from inside of the residence.[16] He maintained that a loaded firearm was collected at another residence and steps were taken to render the weapon safe.[17]

---

[14] Mr. Jefferson identified the 9-1-1 call he placed, and it was published for the jury.

[15] Mr. Jefferson explained that he had exterior cameras positioned at every corner of his house, which captured the outside of the residence. On cross-examination, Mr. Jefferson confirmed that he originally said that he was unable to rewind the cameras because of a Wi-Fi issue. Mr. Jefferson also confirmed that he later said he was able to rewind the cameras. Mr. Jefferson testified that the police asked for a copy of the surveillance footage, but he did know how to provide the footage.

[16] In his testimony, Mr. Aicklen did not provide a specific address, but he did identify the residence where these items were collected. Trial testimony established that this was the residence of Ms. Harris and Mr. Jefferson which was located at 4367 Lynnbrook Drive in Harvey.

[17] Trial testimony established that the firearm was discovered at 2498 Paige Jeanette.

At the conclusion of the trial, the jury found Defendant guilty as charged on counts one and three. As to count two, Defendant was found guilty of the lesser and included offense of illegal possession of stolen things with a value of less than one thousand dollars.[18,19] On November 4, 2019, the trial court sentenced Defendant as follows: 75 years at hard labor without the benefit of parole, probation, or suspension of sentence as to count one, six months in the Jefferson Parish Correctional Center as to count two, and five years at hard labor as to count three. The court further ordered that all of Defendant's sentences be served concurrently. Thereafter, on that same date, the State filed a habitual offender bill of information as to count one, alleging Defendant to be a third-felony offender.[20] Defendant denied the habitual offender bill allegations, and the trial court set the habitual offender bill hearing.

On November 6, 2019, a habitual offender bill hearing was held, after which the trial court found that the State presented competent evidence that Defendant was a third-felony offender under La. R.S. 15:529.1(D)(2)(b).[21] The trial court then vacated its previously imposed sentence on count one and resentenced

---

[18] It is noted that there are two written verdict sheets in the record. The first verdict sheet reflects that the jury found Defendant guilty of "illegal possession of stolen things of a value of $1,000 or more, but less than $5,000" as to count two. A review of the record reveals this is the jury verdict sheet given to the trial court before it remanded the jury for further deliberation on count two. The second verdict sheet included in the record reflects that the jury found Defendant guilty of the lesser and included offense of "illegal possession of stolen things of a value of less than $1,000" as to count two.

[19] The *Nunc Pro Tunc* minute entry dated November 4, 2019 corrects the minute entry dated October 29, 2019. The original minute entry indicated that the jury found Defendant guilty as charged on all counts. The original minute entry provides that the "jury was polled, the verdict was declared legal and ordered recorded." The *Nunc Pro Tunc* minute entry clarifies that the jury initially returned with a verdict, and the jury was polled. It provides that the trial court ordered "the jury to return to re-deliberate as to Count 2" after the verdict was "declared not legal." The *Nunc Pro Tunc* minute entry provides that the jury returned with a verdict finding Defendant guilty as charged, that "the defense waived polling," and that the verdict was declared "legal and ordered recorded." The transcript reflects that the jury initially found Defendant guilty as charged on counts one and three and of a lesser and included offense of "illegal possession of stolen things with a value of one thousand or more, but less than five thousand" as to count two. The trial court ordered further jury deliberations after polling revealed a vote of 9-3 as to count two. However, after deliberations, the transcript does not reflect that Defendant was found guilty as charged on all counts. Instead, the transcript only reveals that Defendant was convicted of a lesser and included offense as to count two.

[20] In the habitual offender bill, the State alleged that Defendant had a 2009 conviction of simple burglary, a violation of La. R.S. 14:62 in district court case number 09-114 in the 24th Judicial District Court, and a 2012 conviction of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4 in district court case number 11-6258 in the 24th Judicial District Court.

[21] At the habitual offender bill hearing, Defendant stipulated that the time period between Defendant's release from the 2011 case to the occurrence of the 2018 case did not exceed five years.

Defendant to ninety-nine years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.

On November 8, 2019, the trial court issued written reasons for judgment regarding the basis for the habitual offender adjudication.[22] On November 28, 2019, Defendant filed a motion to reconsider sentence and a motion for appeal. On December 6, 2019, the trial court denied Defendant's motion to reconsider sentence.[23] Thereafter, on December 10, 2019, the trial court granted Defendant's motion for appeal. The instant appeal followed.

## ASSIGNMENT OF ERROR

On appeal, Defendant's sole assignment of error alleges the trial court committed reversible error in validating the jury's 9-3 verdict on the conviction for count two.

## LAW AND ANALYSIS

Jurisdiction of the Court

Defendant seeks to appeal his misdemeanor conviction as to count two for illegal possession of stolen things valued at less than $1,000, in violation of La. R.S. 14:69(B)(4).[24] As to count two, Defendant was charged and tried by a 12-person jury for a felony—illegal possession of stolen things valued at between $5,000 to $24,999, in violation of La. R.S. 14:69(B)(2).[25] This Court's appellate

---

[22] Defendant filed an objection to the habitual offender bill, which was denied by the trial court on November 8, 2019. However, Defendant's motion is not included in the record.

[23] The trial court denied Defendant's motion and found "no basis to disturb the sentences already imposed which are appropriate for the serious offenses."

[24] La. R.S. 14:2 defines a felony as "any crime for which an offender may be sentenced to death or imprisonment at hard labor" and defines a misdemeanor as "any crime other than a felony." *See also* La. C.Cr.P. art. 933. The penalty provision of La. R.S. 14:69(B)(4) provides that the offender "shall be imprisoned for not more than six months or may be fined not more than one thousand dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction, he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both."

[25] As to count two, the penalty provision of La. R.S. 14:69(B)(2) provides that the offender "shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than ten thousand dollars, or both." The penalties on counts one and three require that the sentences be served at hard labor.

La. C.Cr.P. art. 782 provides in pertinent part as follows:

jurisdiction extends only to cases that are triable by a jury. *State v. Carroll*, 16-599 (La. App. 5 Cir. 2/8/17); 213 So.3d 486, 488 n.1; *State v. Chess*, 00-164 (La. App. 5 Cir. 6/27/00); 762 So.2d 1286, 1287 (citing La. Const. of 1974, art. 5 § 10; La. C.Cr.P. art. 912.1).[26]

In the instant matter, Defendant was charged in the same bill of information with armed robbery (count one); illegal possession of stolen things valued at between $5,000 to $24,999 (count two); and aggravated flight from an officer in (count three). Trial commenced before a 12-person jury on October 28, 2019, and concluded the following day. Even though this case involves a misdemeanor conviction, we find that the matter is appealable because Defendant's charge as to count two was a felony that was "triable by a jury." *See State v. Armant*, 02-907

---

A. A case in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.

La. C.Cr.P. art. 493 provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

La. C.Cr.P. art. 493.2 provides:

Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

Since the punishment for the offenses in counts one and three is necessarily confinement at hard labor, a jury of twelve persons was required. *See* La. Const. Art. I, § 17 and La. C.Cr.P. art. 782; La. R.S. 14:64; La. R.S. 14:108.1(C). Also, it appears that count two was charged in the same bill of information as the other counts because it was part of a common scheme or plan. Therefore, a jury of twelve persons was required for those counts as well. *See* La. C.Cr.P. arts. 493, 493.1, 782.

[26] Unless the punishment that may be imposed exceeds six months imprisonment, a misdemeanor is not triable by a jury. *Chess, supra* (citing La. Const. of 1974, art. 1 § 17; La. C.Cr.P. art. 779; *State v. Robinson*, 94-864 (La. App. 5 Cir. 3/15/95); 653 So.2d 669, 670).

(La. App. 5 Cir. 1/28/03); 839 So.2d 271, 273 (where this Court noted that although the case involved the defendant's misdemeanor convictions, the matter was still appealable because it was triable by a jury); *State v. Gaubert*, 15-774 (La. App. 4 Cir. 12/9/15); 179 So.3d 982, 987, *writ denied*, 16-122 (La. 1/23/17); 215 So.3d 681 (the Louisiana Fourth Circuit noted that it had jurisdiction over the defendant's appeal from her misdemeanor conviction because the defendant was charged and tried for a felony that was "triable by jury").

Based on the foregoing, this Court has jurisdiction over the instant appeal from a misdemeanor conviction as to count two.

Sufficiency of the Evidence

Defendant alleges that he was convicted by an unconstitutional 9-3 jury verdict as to count two. Defendant maintains that the trial court "improperly interpreted" the 9-3 jury verdict and subsequently found Defendant guilty of a misdemeanor offense. As to count two, Defendant was charged with illegal possession of stolen things valued at "between $5,000 to $24,999" and was convicted of illegal possession of stolen things with a value of less than one thousand dollars. On appeal, he did not challenge the sufficiency of the evidence used to convict him of the lesser and included offense. However, the Louisiana Supreme Court and this Court have recognized insufficiency of evidence to support a reversal, even where the defendant fails to raise the issue on appeal. *State v. Raymo*, 419 So.2d 858, 861 (La. 1982); *State v. Jackson*, 99-1256 (La. App. 5 Cir. 7/25/00); 767 So.2d 848, 852, *writ denied*, 00-2528 (La. 10/5/01); 798 So.2d 960. In *Raymo*, the supreme court held that "[b]ecause the state's case was devoid of evidence of an essential element of the charged offense. . . defendant's conviction and sentence must be set aside . . . regardless of how the error is brought to the attention of the reviewing court." *Raymo*, 419 So.2d at 861.

The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under the *Jackson* standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Ray*, 12-684 (La. App. 5 Cir. 4/10/13); 115 So.3d 17, 19, *writ denied*, 13-1115 (La. 10/25/13); 124 So.3d 1096 (*citing*, *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08); 985 So.2d 234, 240).

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Paul*, 15-501 (La. App. 5 Cir. 1/27/16); 185 So.3d 188, 198 (citing *State v. Mitchell*, 99-3342 (La. 10/17/00); 772 So.2d 78, 83 (quotation omitted)).

It is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluation under the *Jackson* standard of review. *Id.* at 199-200 (*citing*, *State v. Bailey*, 04-85 (La. App. 5 Cir. 5/26/04); 875 So.2d 949, 955, *writ denied*, 04-1605 (La. 11/15/04); 887 So.2d 476, *cert. denied*, 546 U.S.

981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005)). It is not the function of the appellate court to assess the credibility of witnesses or re-weigh the evidence. *Id.* at 200 (*citing*, *State v. Marcantel*, 00-1629 (La. 4/3/02); 815 So.2d 50, 56; *Bailey*, *supra*).

In the instant case, Defendant was charged with armed robbery (count one), illegal possession of stolen things valued at "between $5,000 to $24,999" (count two), and aggravated flight from an officer (count three). Defendant was found guilty as charged on counts one and three, and convicted of the lesser and included offense of illegal possession of stolen things with a value of less than $1,000 as to count two. The record indicates that the initial jury concurrence on counts one and three were unanimous, while count two was 9-3. After further jury deliberations, Defendant was found guilty as charged on counts one and three and guilty of the lesser included offense of illegal possession of stolen things with a value of less than $1,000 on count two. However, defense counsel did not request that the jury be polled, and the trial court stated that "the verdict of the jury is ordered legal and recorded."

La. R.S. 14:69[27] provides in pertinent part:

A. Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of a robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.

\*\*\*

B.(4) When the value of the stolen things is less than one thousand dollars, the offender shall be imprisoned for not more than six months or may be fined not more than one thousand dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction, he shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.

---

[27] In this case, Defendant was convicted on count two of the lesser and included misdemeanor offense of illegal possession of stolen things with a value of less than $1,000. The trial court sentenced him as such and stated, "As to Count 2, the jury came back with a misdemeanor amount of the illegal possession of stolen things, the Court would sentence you to six months in the Jefferson Parish Correctional Center."

There are four essential elements for the crime of possession of stolen things: (1) the item was stolen; (2) the item was of value; (3) the defendant knew or should have known that the property was stolen; and (4) the defendant intentionally possessed, procured, received, or concealed the property. La. R.S. 14:69; *State v. Morris*, 41,651 (La. App. 2 Cir. 12/13/06); 945 So.2d 212, 214-15, *writ denied*, 07-87 (La. 9/21/07); 964 So.2d 331 (*citing*, *State v. Walker*, 350 So.2d 176 (La. 1977)).

At trial, Mr. Johnson testified as to his accounts of the morning of November 15, 2018. He further testified as to how he acquired the 2002 black Ford Escape that was stolen from him on that morning and how much he paid for the vehicle. When being questioned about the value of the vehicle, the following exchange occurred:

> Q. Okay. Okay. So, Mr. Johnson, with your knowledge of the deal that you were getting and the transaction that you were making, was the value of that car five thousand dollars?
>
> MR. BONIN:
> Objection. Opinion testimony. It's opinion to the ultimate issue.
>
> THE COURT:
> Overruled.
>
> BY MR. VANDERHOOFT:
> Q. Do you want me to repeat that, Mr. Johnson?
>
> A. Yeah. Repeat it.
>
> Q. Yes. Since it was your transaction for the vehicle and you knew what deal you were getting and you were going to do the work on the vehicle yourself, right?
>
> A. Yes.
>
> Q. And did you know that the vehicle was worth over five thousand dollars?
>
> A. Yes. That's why I bought it.
>
> Q. That's why you bought it.

A. Yes.

When the degree of the crime is based on the value of the stolen property possessed, the testimony of the owner is sufficient to establish the value of the stolen property, if it is clear and uncontradicted. *State v. Stock*, 16-552 (La. App. 5 Cir. 2/22/17); 212 So.3d 1268, *appeal after remand*, 17-340 (La. App. 5 Cir. 12/13/17); 234 So.3d 1128, citing La. R.S. 14:69; *State v. Warrick*, 15-617 (La. App. 5 Cir. 2/24/16); 186 So.3d 1263.

Here, Mr. Johnson, the owner of the vehicle, testified generally that the vehicle was worth over $5,000. However, there was no evidence provided to prove the actual value of the vehicle as of the day it was stolen. Thus, the value of the stolen property is not clear in the record. *See*, *Stock*, *supra*. Accordingly, we find that the State failed to present evidence of the value of the stolen property sufficient to prove that Defendant was guilty of illegal possession of stolen things valued at less than $1,000 beyond a reasonable doubt. Therefore, we reverse and vacate the conviction and sentence on count two.

**DECREE**

For the foregoing reasons, Defendant's conviction and sentence for count two, illegal possession of stolen things valued at less than $1,000, are reversed and vacated, and we enter a judgment of acquittal on count two. Additionally, we affirm Defendant's convictions as to counts one and three.

<u>**REVERSED AND VACATED, IN PART;**</u>
<u>**JUDGMENT OF ACQUITTAL RENDERED ON COUNT TWO**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 30, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 20-KA-142

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
DARREN A. ALLEMAND (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          PRENTICE L. WHITE (APPELLANT)
GRANT L. WILLIS (APPELLEE)

### MAILED
HONORABLE JEFFREY M. LANDRY          HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)                           (APPELLEE)
ATTORNEY GENERAL                     DISTRICT ATTORNEY
LOUISIANA DEPARTMENT OF JUSTICE      JOSHUA K. VANDERHOOFT (APPELLEE)
1885 NORTH 3RD STREET                RACHEL L. AFRICK (APPELLEE)
6TH FLOOR, LIVINGSTON BUILDING       ASSISTANT DISTRICT ATTORNEYS
BATON ROUGE, LA 70802                TWENTY-FOURTH JUDICIAL DISTRICT
                                     200 DERBIGNY STREET
                                     GRETNA, LA 70053